FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2016 MAY -2  A 11: 24

CLERK'S OFFICE
AT GREENBELT
BY_____DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **JOSEPH JERMAINE PRINGLE,** | * |
| | * |
| Petitioner, | * |
| | *     **Case No.: GJH-14-3041** |
| v. | * |
| | * |
| **BETTY JOHNSON, et al.,** | * |
| | * |
| Respondents. | * |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Petitioner Joseph Jermaine Pringle filed a pro se petition for habeas corpus relief. ECF No. 1. Respondents argue that the timely petition for habeas corpus relief should be dismissed because several of the grounds raised were not first presented in the state courts. ECF No. 7. Alternatively, they argue that several of the grounds presented fail to state cognizable claims and that Pringle otherwise is not entitled to habeas relief.[1] *Id.* A hearing is unnecessary. Loc. R. 105.6 (D. Md. 2014). For reasons noted herein, Pringle's petition shall be denied, and a certificate of appealability shall not issue.

### I. BACKGROUND

#### A. Procedural History

On May 2, 2011, Pringle entered an *Alford*[2] plea in the Circuit Court for Howard County

---

[1] Respondents cite 28 U.S.C. § 2244(d) as a basis for dismissal of the case. ECF No. 7 at 1. Section 2244(d) governs the one-year limitations period within which a state prisoner must initiate federal habeas corpus review. The record shows the petition is timely filed, and Respondents do not argue otherwise.

[2] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970) (an accused may voluntarily and knowingly consent to imposition of sentence even if unwilling to admit to participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record strongly evidences his guilt).

to one count of possession of heroin with the intent to distribute. ECF No. 7-1 at 3; ECF 7-2 at 5.[3] In exchange for his plea, the State agreed to pursue Pringle as a second-time offender, rather than as a three-time offender, reducing his sentencing exposure from twenty-five years without parole to ten years without parole. ECF 7-2 at 3–4. Pringle was sentenced to ten years of incarceration without the possibility of parole. *Id.* at 18–26. He did not seek leave to appeal the plea and his judgment of conviction became final on June 1, 2011. ECF 7-1; *see* Md. Rule 8-204 (requiring application for leave to appeal to be filed within thirty days of date of judgment from which appeal is sought).

On October 12, 2011, Pringle filed a petition for post-conviction review in the Circuit Court for Howard County. ECF No. 1 at 2; ECF No. 7-1 at 3; ECF No. 7-3. As delineated by the post-conviction court, Pringle presented the following grounds in support of his claim of ineffective assistance of trial counsel: (1) counsel failed to file a motion for modification or reduction of sentence; (2) counsel failed to file an application for leave to appeal the conviction; (3) counsel failed to file a motion for review of sentence by a three-judge panel; (4) counsel gave Pringle "bad advice about the plea agreement"; (5) counsel failed to file a pretrial motion to suppress and did not call Detectives Grossman and Smith at the suppression hearing; and (6) counsel did not obtain a transcript of an *in camera* review of evidence. ECF 7-3 at 2–3. The post-conviction court heard testimony on the petition, as supplemented, and denied post-conviction relief in a memorandum opinion and order filed on May 31, 2013. Pringle appears to have presented the same grounds in his application for leave to appeal the denial of post-conviction relief. ECF No. 7-5. The application for leave to appeal was summarily denied by the Court of

---

[3] This Order adopts the pagination assigned by the Court's electronic docketing system.

Special Appeals of Maryland in an unreported opinion filed on March 25, 2014.[4] *Id.*

Pringle signed his self-represented habeas corpus petition on September 22, 2014.[5] ECF 1 No. at 11. As construed by this Court, the petition presents the following grounds for relief: (1) the trial court erred in failing to disclose the identity of the informant who made the "controlled buy" that led to Pringle's arrest; (2) the in camera review of the information obtained from the informant should have been transcribed; (3) the trial court erred in denying a *Franks*[6] hearing to determine whether a detective's testimony was tainted; and (4) trial counsel provided ineffective assistance by failing to seek leave to appeal, file a motion for modification of sentence, and seek review of sentence by three-judge panel. ECF 1 at 5–6.

### B. Facts Adduced During the Plea

Pringle's *Alford* plea was based upon the following facts recited by the State:

Your Honor, in the fall of 2009 the Southeastern Drug Section of the Baltimore City Police Department, specifically Detective Tom Smith, was conducting an investigation into an individual by the name of Joseph Germaine Pringle, who would be later identified as the defendant, seated next to counsel at trial table, Your Honor.

Detective Smith had obtained a search and seizure warrant for two residences: One in Baltimore City; the other for an address in Howard County, specifically 5923 Tamar Drive, Apartment number 8, in Columbia.

During the course of Detective Smith's investigation, he learned that the defendant was transporting quantities of heroin from the Columbia residence in Howard County to various locations in Baltimore City.

---

[4] The mandate issued on April 24, 2014. *Id.*

[5] The petition was received by the Clerk on September 25, 2014, but is deemed filed on the date of signing. *See Houston v. Lack*, 487 U.S. 266, 108 S. Ct. 2379 (1988); *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 734–35 (4th Cir. 1991); *United States v. Dorsey*, 988 F. Supp. 917, 919–20 (D. Md. 1998).

[6] *Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S. Ct. 2674 (1978) (determining that an evidentiary hearing regarding an affidavit's integrity may be obtained if defendant makes substantial preliminary showing that affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement essential to a probable cause determination in a warrant affidavit).

Detectives also learned that the defendant stores and manufactures quantities of heroin within the apartment on Tamar Drive.

Detectives learned that a female by the name of Shaquette Anderson, date of birth November 2, 1979, was one of the girlfriends of the defendant and she was, in fact, the lessee of the apartment.

The search warrant was executed, Your Honor, on September 18 at about 5:30 in the morning, this is the year 2009, with the assistance of the Howard County Police Department. Located in the residence they found Shaquette Anderson as well as her two young children, one of whom is a child with the defendant.

During the execution of the search and seizure warrant the detectives located mail in the name of both Shaquette Anderson and the defendant, Mr. Pringle.

Inside a shopping bag that was located in the master bedroom closet, Your Honor, the police located, what appeared to be, approximately two ounces of suspected heroin in a plastic bag.

They found several thousand unused plastic gel caps which Detective Smith, who has been qualified as an expert in the area of drug-trafficking on prior occasions in multiple different jurisdictions, would have testified . . . are used to actually contain -- or to package the heroin for sale.

In addition, they located one glass jug containing suspected heroin; approximately $1,600.00 in cash. This was located, again, in the master bedroom closet but in a second bag.

There were unused small Zip-lock baggies; another plastic bag containing sixteen plastic gel caps which contained suspected heroin. Also in the master bedroom, they found a digital scale with suspected heroin residue. This was located in a dresser drawer. And on the floor of the master bedroom, they found additional unused plastic gel caps.

And Detective Smith would've testified, Your Honor, in his expertise, that the quantity that was located along with all of the packaging material was indicative of distribution.

The items were turned into the Maryland State Police Crime Lab for analysis and forensic chemist, Joshua (phonetic) Yohannon, did analyze them and look -- found them to be Schedule I heroin, approximately seventy grams. Mr. Pringle was not located inside of that residence, Your Honor.

The second search warrant for, what detectives believe to be his Baltimore City address, 1304 Ballard Way, was executed around the same time and Mr. Pringle was located in that residence.

4

Your Honor, the State would've called, also to testify, Shaquette Anderson, who was originally charged as well in this case. She would've testified under a cooperation agreement by which she had entered a plea of guilty to possession of the heroin, in exchange for a suspended sentence recommendation by the State.

She would've testified that she has known Mr. Pringle for about thirteen years; that she knew that he had a history of selling drugs. She had moved into this Tamar Drive apartment in 2008 and he did have his own key; that he would come by almost every day. She did rely on him to some extent to assist with the -- the care of their child. Ms. Anderson works full-time and Mr. Pringle would be there when the child would come back from school.

She has seen Mr. Pringle take gel caps out of the bag that's located in the master bedroom closet, as well as put things into the bag.

She did indicate that he does use some of the dresser drawers in that residence, as well as the -- the master bedroom.

There -- she indicated that there were several times where she had asked the defendant what was in the bag and he told her that it was heroin. He told her that he had to do what he needed to do.

She was not aware of him using drugs, just selling. She had asked him about, at times, about getting a real job for employment and he indicated that with his history he didn't think he could make the type of money that he was making now.

She did say that there was a few occasions where she overhead Mr. Pringle on the phone and would be saying things like, 'What number? Okay. I got you,' and that he would then go to the closet and she could see him taking gel caps out of the closet and then rush out of the apartment.

    Court's indulgence.

THE COURT: Um-hmm.

MS. OLDHAM: Your Honor, all events did occur in Howard County, Maryland and that would be the State's statement in support of a plea.

THE COURT: Okay. Any additions or corrections?

MR. NEVERDON: There are none, Your Honor.

ECF No. 7-2 at 14–18. The court accepted Pringle's plea and, pursuant to its terms, sentenced

Pringle to the recommended sentence of ten years in prison without the possibility of parole. *Id.* at

18–26. Pringle's post-judgment and appellate rights were explained to him on the record. *Id.* at
27–28.

## II.   STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the
Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28
U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh
v. Murphy*, 521 U.S. 320, 333 n.7, 117 S. Ct. 2059 (1997); *see also Bell v. Cone*, 543 U.S. 447,
125 S. Ct. 847 (2005). The standard is "difficult to meet," and requires courts to give state-court
decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 171, 131 S. Ct. 1388
(2011) (internal quotation marks and citations omitted); *see also White v Woodall*, __ U.S.__,
134 S. Ct 1697, 1702 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770
(2011)) (noting that a state prisoner must show state court ruling on a claim presented in federal
court was "so lacking in justification that there was an error well understood and comprehended
in existing law beyond any possibility for fair minded disagreement").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on
the merits "resulted in a decision that was contrary to, or involved an unreasonable application
of, clearly established federal law, as determined by the Supreme Court of the United States," or
"resulted in a decision that was based on an unreasonable determination of the facts in light of
the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication
is contrary to clearly established federal law under § 2254(d)(1) where the state court "arrives at
a conclusion opposite to that reached by [the Supreme] Court on a question of law," or
"confronts facts that are materially indistinguishable from a relevant Supreme Court precedent

and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495 (2000).

Under § 2254(d)(1)'s "unreasonable application" analysis, a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 103 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 785 (internal quotation marks omitted).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301, 130 S. Ct. 841 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773, 130 S. Ct. 1855 (2010).

The habeas statute provides that "a determination of a factual issue made by a state court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where

state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "If this standard is difficult to meet"—and it is—"that is because it was meant to be." *Id.* at 102. A federal court reviewing a habeas petition will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.* (internal quotation marks omitted).

## III.   DISCUSSION

### A.   Threshold Issues

1. Exhaustion

Respondents correctly note that habeas petitioners must exhaust available state remedies before seeking relief in federal court. *See Cone v. Bell*, 556 U.S. 449, 465, 129 S. Ct. 1769 (2009); *see also* 28 U.S.C. § 2254(b)(1); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997) (citing § 2254(b)(1)(A)) ("It is axiomatic that a federal habeas court may not grant a petition for a writ of habeas corpus unless the petitioner has first exhausted the remedies available in the state courts.").

Before a petitioner seeks federal habeas corpus relief, he must exhaust each claim presented to the federal court by first pursuing remedies available in the state court. *See Leonard v. Hammond*, 806 F.2d 838, 840 (4th Cir. 1986). This exhaustion requirement is satisfied by

8

seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S. Ct. 1728 (1999); *see also* 28 U.S.C. § 2254(b)–(c). In Maryland, this may be accomplished by raising certain claims on direct appeal and by way of post-conviction proceedings. *See Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997); *Spencer v. Murray*, 18 F.3d 237, 239 (4th Cir. 1994). The exhaustion requirement demands that the petitioner "'do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.'" *Mallory v. Smith*, 27 F.3d 991, 994–95 (4th Cir. 2001) (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)). This exhaustion requirement is not a jurisdictional prerequisite to federal habeas corpus relief, but a matter of comity. *See Granberry v. Greer*, 481 U.S. 129, 134–35, 107 S. Ct. 1671 (1987). The state courts are to be afforded the first opportunity to review federal constitutional challenges to state convictions in order to preserve the role of the state courts in protecting federally guaranteed rights. *See Preiser v. Rodriguez*, 411 U.S. 475, 490, 93 S. Ct. 1827 (1973).

The United States Supreme Court has interpreted § 2254(c) to require a state prisoner to present his claims to the state's highest court, even if review is discretionary, when such review is part of the ordinary appellate review procedure. *See O'Sullivan*, 526 U.S. at 845. This generally requires appealing state court decisions all the way to the state's highest court. *Id.* at 847. Exhaustion is not required if at the time a federal habeas corpus petition is filed petitioner has no available state remedy. *See Teague v. Lane*, 489 U.S. 288, 297–98, 109 S. Ct. 1060 (1989); *Bassett v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990).

Notwithstanding Respondents' argument to the contrary, Pringle has exhausted his state court remedies; he did not file an appeal following his *Alford* plea, but he has completed state post-conviction review. The question before the Court is not whether Pringle has exhausted state court remedies, but rather whether various issues raised in Pringle's federal petition do not mirror the claims raised on post-conviction review, and are subject to the procedural default doctrine.

    2.  Procedural Default

Pringle's claim concerning trial counsel's failure to file post-judgment motions (Ground 4) was presented by way of post-conviction and may be examined on the merits. The question of procedural default arises with Pringle's remaining claims.

Review of the post-conviction transcript shows that Pringle's grounds concerning the identity of the informant, deficiencies regarding a pretrial motion to suppress and a *Franks* hearing, and failure to obtain transcription of *in camera* review of the lead detective's testimony (contained in Grounds 1, 2 and 3) were developed at his post-conviction hearing as elements affecting the performance of trial counsel.[7] Here, however, these deficiencies are presented as the result of trial court error. Thus, as presented here, Grounds 1, 2 and 3 do not appear to have been presented in the state courts.

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U.S. 722, 749–50, 111 S. Ct. 2546 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489–91, 106 S. Ct. 2639 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46, 93 S. Ct. 71 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551

---

[7] *See* ECF 19 at 8–14 (informant), 12, 24–29 (suppression hearing), and 25–28 (*Franks* hearing).

F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post- conviction

relief).

As the Fourth Circuit has explained:

If a state court clearly and expressly bases its dismissal of a habeas petitioner's
claim on a state procedural rule, and that procedural rule provides an independent
and adequate ground for the dismissal, the habeas petitioner has procedurally
defaulted his federal habeas claim. *See Coleman v. Thompson*, 501 U.S. 722, 731–
32, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991). A procedural default also occurs
when a habeas petitioner fails to exhaust available state remedies and "the court to
which the petitioner would be required to present his claims in order to meet the
exhaustion requirement would now find the claims procedurally barred." *Id.* at
735 n.1.

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

If procedural default has occurred, a federal court may not address the merits of a state

prisoner's habeas claim unless the petitioner can show (1) cause for the default and prejudice that

would result from failing to consider the claim on the merits, or (2) that failure to consider the

claim on the merits would result in a miscarriage of justice, *i.e.*, the conviction of one who is

actually innocent. *Murray* , 477 U.S. at 495–96 (1986); *Breard*, 134 F.3d at 620. "Cause"

consists of "'some objective factor external to the defense [that] impeded counsel's efforts' to

raise the claim in state court at the appropriate time." *Murray*, 477 U.S. at 488.

Typically, if a claim is defaulted, a petitioner is given an opportunity to explain what

"cause" excuses the default and what prejudice would result if the claim is barred, or to explain

why the failure to consider the claim on the merits would result in the continued confinement of

one who is actually innocent. A petitioner might also indicate whether he seeks a stay and

11

abeyance so that he may attempt to exhaust any of his claims by seeking to reopen state post-conviction proceedings.[8]

Such additional development of the record is not necessary here. Pringle did not preserve his claims of trial court error with regard to suppression of evidence because he failed to timely avail himself of the option of seeking leave to appeal. For reasons noted below, this failure came about not as a result of trial counsel's deficiencies, but because Pringle's wife and family friends, who could no longer afford private representation, informed trial counsel that the request for leave to appeal would be filed through the state public defender. ECF 19-1 at 36–37, 57–61. Further, after a suppression hearing that included the trial court's *in camera* interview of the lead detective, Pringle, through counsel, negotiated a plea arrangement that ended his right to assert any factual or legal defenses to the charges, but limited his mandatory prison sentence and the impact of this latest arrest and conviction in the future when faced with revocation of parole. ECF 19-1 at 24–35. As there is no allegation that the *Alford* plea was uncounseled or involuntary, Pringle cannot now assert actual innocence. *See generally, McCarthy v. United States*, 394 U.S. 459, 466, 89 S. Ct. 1166 (1969). Procedural default bars consideration of Pringle's claims regarding trial court error; his claims of ineffective assistance of trial counsel may proceed for review on the merits.

### B. Petitioner's Claim for Ineffective Assistance of Trial Counsel

Pringle asserts ineffective assistance of trial counsel concerning post-judgment matters, including filing an appeal, filing a motion for modification of sentence, and seeking review of sentence by a three-judge panel. When a petitioner alleges a claim of ineffective assistance of

---

[8] Any request for a stay and abeyance is only available if there is good cause for a petitioner's failure to exhaust the claims and the unexhausted claims are not meritless. *See Rhines v. Weber*, 544 U.S. 269, 277, 125 S. Ct. 1528 (2005) (district court abuses its discretion if stay and abeyance is granted for unexhausted claims which are plainly meritless).

counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984). The second prong requires the court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id.* at 696. Although "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," it is equally true that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91. Where circumstances are such that counsel should conduct further investigation to determine "whether the best strategy instead would be to jettison [a chosen] argument so as to focus on other, more promising issues," failure to conduct further investigation can amount to constitutionally deficient assistance. *See Rompilla v. Beard*, 545 U.S. 374, 395, 125 S. Ct. 2456 (2005) (O'Connor, J., concurring). Counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment and the burden to show that counsel's performance was deficient rests squarely on the defendant. *See Burt v. Titlow*, __ U.S. __, 134 S. Ct. 10, 17 (2013).

Respondents contend that Pringle has no federal constitutional right to counsel in connection with his post-judgment motions. *See Wainwright v. Torna*, 455 U.S. 586, 587–88, 102 S. Ct. 1300 (1982) (stating that a criminal defendant cannot complain about ineffective assistance where he has no constitutional right to counsel to pursue discretionary relief). Such

argument finds support in Maryland law, which provides that a defendant who pleads guilty

forfeits any right to a direct appeal. *See Bruno v. State*, 332 Md. 673 (1993). Respondents have

not addressed whether an *Alford* plea also results in such forfeiture, and absent such discussion,

the Court declines to apply *Bruno* here.

Denial of Pringle's claims of ineffective assistance instead garners support in the post-

conviction record, specifically the testimony provided by trial counsel Russell Neverdon, which

the post-conviction court found credible:

> In the instant case, Petitioner had the right to file Application for Leave to
> Appeal if he requested. Here, however, trial counsel testified that it was not the
> Petitioner's intention for him to file Application for Leave to Appeal on his
> behalf. Petitioner did not request the Application for Leave to Appeal, and in
> fact Ms. Howard, identified at the hearing as Petitioner's significant
> other/wife, expressly advised trial counsel that they would pursue Application
> for Leave to Appeal through the Public Defender's office, where the
> associated costs could be paid by the Public Defender's office.
>
> This Court heard testimony that Petitioner did not want representation from
> trial counsel and in fact was proceeding with the Office of the Public
> Defender, thus no action of trial counsel was warranted.
>
> The Defendant's failure to request, contact or discuss with trial counsel, and
> the discussion trial counsel had with Ms. Howard, suggest that trial counsel's
> performance did not fall below an objective standard of reasonableness;
> therefore, his performance was not deficient because Petitioner is unable to
> satisfy the performance prong of *Strickland*, the Court need not address prong
> two, the prejudice prong. *Strickland*, 466 U.S. at 697; *Oken*, 343 Md. at 284.
> The Court finds that Petitioner's allegation of ineffective assistance of counsel
> with respect to trial counsel's failure to file Application for Leave to Appeal is
> without merit. Therefore, the Court denies relief on this ground.

ECF 7-3 at 9–10; *see also* ECF 19-1 at 57–62.

The post-conviction court also credited Neverdon's testimony that Pringle never asked

that a motion for modification or reduction of sentence be filed, nor did he request that Neverdon

seek three-judge panel review.[9] ECF 7-3 at 11; *see also* ECF 19-1 at pp. 62–63. This finding is

---

[9] Pringle in fact filed his own motion for modification or reduction of sentence on August 2, 2011, which

presumptively correct and is a reasonable application of *Strickland.* Pringle's ineffective assistance of counsel claims find no support in the record, and accordingly, his habeas corpus petition shall be denied.

Pringle has no entitlement to appeal this denial of relief. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U. S.C. § 2253(c)(2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282, 124 S. Ct. 2562 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029 (2003). Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See* 28 U. S.C. § 2253(c)(2).

## IV.   CONCLUSION

For the reasons stated above, Pringle's petition is DENIED, and a certificate of appealability shall not issue. A separate order shall follow.

Dated: __May   2, 2016__

GEORGE J. HAZEL
United States District Judge

---

was denied on the merits on August 9, 2011. *Id.*